# Ellen Catherine Bollinger *v.* William M. Cowan, Appellant.

*Promissory notes—Lost note—Evidence—Province of court and jury.*

In an action on a promissory note, given for a loan, and alleged to be lost, the burden of proof is on the plaintiff to show that the loan was made, the note given and lost.   Where the evidence is conflicting the case is for the jury, and a verdict for plaintiff implies a finding by the jury of all the facts in her favor upon which her right of action depended.

Argued Oct. 12, 1899.   Appeal, No. 94, Oct. T., 1899, by defendant, from judgment of C. P. Venango Co., April T., 1897, No. 64, on verdict for plaintiff.   Before Sterrett, C. J., Green, McCollum, Mitchell and Fell, JJ.   Affirmed.

Assumpsit upon a promissory note.   Before Criswell, P. J.

The court charged in part as follows :

[The plaintiff in this action seeks to recover the amount of a note for $1,000, which she alleges the defendant executed and delivered to her on or about June 22, 1895.   She does not produce the note, but alleges that after the execution and delivery thereof it was lost or stolen, and that she has been unable since to find it. . . . Not producing the note, the burden rests upon the plaintiff to satisfy you that the loan was made as alleged by her and the note given.   Therefore, she testifies that the note was made and executed at her own home on or about the date mentioned, in the presence of her husband, her-

self, Mrs. McDowell, Harry Marshall and J. W. Hoffman. She says that she had the money in a bureau drawer; that she produced it in bills and handed it to Mr. Cowan to be counted by him; that he counted the same over, and stated in the presence of these parties, . . . . that it was $1,000; and that he then and there signed the note himself, and procured it to be signed by two other persons, Marshall and Hoffman, as witnesses. . . . . On cross-examination she undertakes to state in what manner and from what source she received this money. In one sense it is immaterial where she got the money or from whom she received it if she in fact had the money at all at the time she alleges, and loaned the same to the defendant, Cowan. But, as bearing on the question whether or not she had the money to loan, and therefore upon the question whether or not she loaned it, it was proper for counsel for defendant to cross-examine her as to where she obtained the money, the defense, as you have already learned, being that no loan was made, and that she did not have the money at all. You will remember her statement in reference to where she obtained the money.

Mrs. McDowell, called as a witness on behalf of the plaintiff, substantially corroborates the testimony of the plaintiff relative to the loan having been made. Mrs. McDowell does not pretend to have any knowledge relative to where the money came from, but she testifies simply to the fact of the loan having been made, the money having been counted in her presence, and the note executed and delivered by the defendant in her presence, and signed by Marshall and Hoffman as witnesses. Mrs. Martha Downs, a neighbor woman, testifies that a short time thereafter a note for $1,000, signed by the defendant, and payable to Mrs. Bollinger, was shown to her by Mr. Bollinger, and that a short time thereafter it was shown to her by Mrs. Bollinger; that the note was signed by Mr. Cowan, or his name was attached thereto, and that the names also of J. W. Hoffman and Harry Marshall were signed thereon, the name of Hoffman being under the name of Cowan, and the name of Marshall being in the left hand corner of the note. Mrs. McDowell also states, we recall, that Hoffman signed under the name of Cowan, and that Marshall signed on the lower left hand corner. Marshall and Hoffman, who are alleged by the plaintiff and Mrs. McDowell to have been present and signed the note as witnesses,

have not been present in court, but their statement has been read to you, and by agreement of counsel, under our rules of court, the statement read is to be given by you the same weight and the same consideration as if the two witnesses, the two persons named, had come into court, gone upon the witness stand under oath, and testified to the facts stated, so that you have the testimony of Mrs. Bollinger and Mrs. McDowell, Harry Marshall and J. W. Hoffman as to the execution and delivery of the note. You have the testimony of Mrs. Downs to the fact that she saw the note some short time thereafter. . . . John Downs was called on behalf of the plaintiff, and he testified, as we remember, that some time after June, 1895, he went with the defendant to the home of the plaintiff, Mrs. Bollinger, for the purpose of assisting in removing her household property from the premises. He states that at that time Mrs. Bollinger, upon the arrival of the defendant at her place, informed the defendant that she would not remove from the premises until he made title to her to a McMillan farm, and pay to her what he owed her. You will remember his testimony as to that, gentlemen, and also the defendant's reply thereto. As we remember it, the defendant denied that he had any such conversation. Mr. Downs further says on cross-examination that, as he remembers, the consideration for the McMillan farm was to be $750, which was to be deducted from the amount of the indebtedness of the defendant to the plaintiff. J. A. Sipe is another witness who is not present, but whose statement has been read to you the same as Mr. Hoffman's and Mr. Marshall's. He said that he was present on a certain occasion, I can't recall the date exactly, but subsequent to June, 1895, when the defendant was at the home of Mrs. Bollinger and was making an examination of the title deeds to the property, and expressed a determination to take the deeds home with him. As we remember his statement, he states that Mrs. Bollinger at that time informed the defendant that he could not take the deeds home with him until he would make title to her to the McMillan farm, the price of which, as he states, was to be $750, as we remember it. . . .

Under the evidence we think the plaintiff is not entitled to recover anything on account, when furnished the defendant, so that you will dismiss that from your consideration, leaving only the amount of this note in question in this suit.

On the part of the defendant we have the testimony of Mr. Cowan himself, who denies that he made any loan from the plaintiff; that he ever executed and delivered to her a note for $1,000 or any sum; that he was not present at the home of the plaintiff, as alleged by her and these other witnesses, on or about June 22, and generally that the whole claim on the part of the plaintiff here is a fabrication, has no foundation in fact, and that the plaintiff is not entitled to recover anything. He further testifies that instead of borrowing money from Mrs. Bollinger, that he lent money to Mrs. Bollinger's husband, Conrad Bollinger; that Mr. Bollinger was indebted to him for some time prior to 1894 in a small amount, and that during the early part of 1894 he borrowed from him $750, in April, as we remember, and gave to the defendant his note therefor, signed by Conrad Bollinger and his son, William Bollinger; that on the 8th day of August succeeding, that is, the 8th day of August, 1894, Conrad Bollinger had a further loan from him, or that he paid certain indebtedness of Mr. Bollinger's, so that Mr. Bollinger was indebted to him at that time in the sum of $1,000, and that he gave to the defendant his note for $1,000; that the note executed by Conrad Bollinger for $1,000 was, as we remember, on August 8, 1894, entered upon the records of this court, and became in the form of a judgment for $1,050, the $50.00, I presume, being attorney's commission. In addition to this indebtedness the defendant further says Conrad Bollinger was indebted to him in the amount of a certain other note for less than $100, which was also entered upon the records of the court here, to August term, 1894, the amount of the judgment being $82.19, so that the defendant alleges that instead of his borrowing money from Mrs. Bollinger, that Conrad Bollinger, her husband, was indebted to him in the sum of $1,132.19, represented by these two judgments, one for $1,050 and the other for $82.19. He further testifies that Mrs. McDowell, a witness on the part of the plaintiff, did not at that time reside in vicinity of Barkeyville, but that she resided in Butler county. A number of witnesses called on behalf of the defendant testified to the fact that Mrs. McDowell was not there at that time; that she lived in the vicinity of Mrs. Bollinger in 1894, but that she left in the fall of 1894, and did not reside there at all in 1895.

You have the testimony of a large number of witnesses called on behalf of the defendant to the effect that the general reputation of J. W. Hoffman is bad. The fact appears to be pretty well established by the witnesses called on behalf of the defendant. No witness has been called who states that his reputation for truth is good in that vicinity. A number of the same witnesses testified that the general reputation for truth of Harry Marshall in the vicinity where he resides is also bad. The number, however, testifying to Mr. Marshall's reputation is much smaller than those testifying to Mr. Hoffman's reputation. Other witnesses have been called tending to contradict the witness, Mrs. Downs, to some extent. Mrs. Downs having testified that she was acquainted with the handwriting of Mr. Cowan, and one witness was called on behalf of the defendant who states that Mrs. Downs told her she wasn't sure about the writing, that she couldn't positively or definitely state that the handwriting was that of Mr. Cowan.

Now, in rebuttal, the plaintiff has called a large number of witnesses who testify to the fact that the general reputation of the defendant for honesty and truth in the neighborhood in which he resides is also bad, and no witnesses have been called to sustain his reputation in respect to either honesty or truth. There have been some twenty-six or twenty-seven witnesses in that neighborhood called on this question, about the same number called to impeach the character of Mr. Hoffman for truth, were called by the plaintiff to impeach Mr. Cowan. In addition to this impeachment by calling of witnesses and proving their reputation for truth, you have other circumstances that are proper to take into consideration in determining what the facts are in this case. The witness, Mrs. McDowell, after having been called by the plaintiff, and testifying very positively as having been present on or about June 22, 1895, when it is alleged this note was given, and after having testified to the details in reference to the giving of the note, at her own request came upon the stand and stated that this occurrence about which she testified did not occur in 1895 at all, that she was not there at that time, but that it occurred in 1894, a year previous to the time before named by her. When upon the stand the second time she adheres to her testimony as given when upon the stand for the plaintiff, except in that respect, that it

occurred a year before, occurred in 1894 instead of 1895, and with the further exception that when upon the stand the last time she does not identify the defendant Cowan as being the person who was present at that time from her knowledge of him, but states that the people there present said it was he, and that, as she remembers, the man that she saw had whiskers. The calling of this witness and the effort on her part to correct and change her testimony affects the plaintiff's case quite materially. The plaintiff alleges and seeks to recover the amount of a note given in 1895. She does not, nor does any other witness allege that any note was given in 1894. All the other witnesses who testify in reference to the note testify that the note was given and was dated in June, 1895, and the defendant here under the pleadings came prepared to defend against a note given in 1895, and not against one given in 1894. Under the pleadings, as we understand the law, the plaintiff has no right to recover in this action for a note given in 1894. If the testimony of the witness, Mrs. McDowell, is believed, that she was present when a note was given in 1894, then necessarily you will have to discard her testimony as not supporting the claim of the plaintiff in this action.] [9]

[The theory of the counsel for plaintiff, however, is that her testimony as given when first upon the stand was correct, and that she was induced to change it by reason of threats of a prosecution for perjury made to her by the defendant, or on his behalf by some one. The plaintiff, therefore, asks you to believe that she testified truly when on the stand the first time, and that she was induced to change her testimony and testify falsely by reason of these threats. You will have to conclude either that she testified falsely when on the stand the second time, or that all of these witnesses on the part of the plaintiff are mistaken as to the time this note was given, and that it was really given in 1894, and not in 1895;] [8] but if it were given in 1894 then it is a different one than that upon which the plaintiff seeks to recover.

Now, gentlemen, this is a case for the jury. There is not much law in it.

Verdict and judgment for plaintiff for $1,176. Defendant appealed.

*Errors assigned* among others were (8, 9) above instructions, quoting them.

*J. H. Osmer*, with him *A. R. Osmer* and *N. F. Osmer*, for appellant.

*J. S. Carmichael*, with him *R. W. Dunn*, for appellee.

PER CURIAM, October 30, 1899:

This suit was brought to recover the sum of $1,011.50, nearly all of which is the amount of a note for $1,000 which plaintiff alleges the defendant made and delivered to her on or about June 22, 1895, for borrowed money.

The note was not produced, because as plaintiff alleged it was lost or stolen from her shortly after its execution and delivery, and after diligent search it could not be found. The burden of proving these and other allegations of fact and circumstances connected with the making, consideration, delivery and loss of the note was assumed by the plaintiff, and for those purposes a considerable amount of testimony—the details of which need not be given—was introduced. On the other hand, the defendant—denying the making and delivery of the note and the alleged consideration thereof—introduced testimony tending to sustain his defense.

Without referring specially to the evidence on either side it is sufficient to say that disputed questions of fact arose which made it the duty of the trial court to submit the case to the jury for their determination. That was done in an impartial, comprehensive and fully adequate charge, in which the jury were elaborately and correctly instructed as to the law applicable to such facts as the evidence tended to prove.

The verdict for plaintiff necessarily implies a finding by the jury in plaintiff's favor of all the facts upon which her right to recover depended. This is conclusive against the defendant unless substantial error intervened during the trial.

The first four specifications complain of the court's rulings on questions of evidence. The remaining specifications allege error in excerpts from the charge, and in the charge as a whole. Our consideration of these several specifications of error has not convinced us that any of them should be sustained, nor do we think that either of them requires special notice.

The judgment is affirmed.